**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION**

| | | |
|---|---|---|
| DUANE EDWARDS MORRIS,<br><br>Plaintiff,<br><br>v.<br><br>DAVID SHANK, *et al.*,<br><br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | Case No. 4:25-cv-84-CDL-AGH |

## REPORT & RECOMMENDATION

Pending before the Court are Defendants David Shank and Leah Unwin's motion for summary judgment (MSJ) (ECF No. 42) and Plaintiff Duane Edwards Morris' MSJ (ECF No. 44). Also before the Court is Plaintiff's motion for extension of time to file surreply (ECF No. 60). Based on the following review, the Court recommends granting Defendants' MSJ and denying Plaintiff's MSJ. The Court also denies Plaintiff's motion for extension of time to file surreply.[1]

## PROCEDURAL BACKGROUND

On March 12, 2025, Plaintiff filed a complaint against Defendants (ECF No. 1). On September 8, 2025, Plaintiff filed an amended complaint, wherein Plaintiff's multiple claims against Defendants were narrowed to a 42 U.S.C. § 1983 Fourth Amendment malicious prosecution claim (ECF No. 21). Plaintiff alleges that he agreed to a plea deal in December 2021 that would suspend his sentence, including probation, if he completed a Regional Substance Abuse Treatment (RSAT) program.

[1] Plaintiff's motion is untimely and does not include his proposed surreply; it is thus **DENIED**.

Am. Compl. 1, ECF No. 21. He further alleges that he completed his RSAT program in November 2022 and was thus no longer subject to probation, but, in March 2023, he was arrested for violating probation. *Id.* at 1-2. Following his arrest, Plaintiff alleges that Defendant Leah Unwin, the supervisor of Plaintiff's prior probation officer Defendant David Shank, offered him two consent orders for two different probations. *Id.* at 2. Plaintiff asserts that he signed the consent orders, agreeing to revoke his probation and serve thirty days incarcerated, but he ended up incarcerated for forty-nine days, before being released on May 4, 2023. *Id.* at 2-3. Plaintiff also alleges that he was never taken before a judge to plead his case regarding his probation violation. *Id.* Plaintiff claims that he later learned the remainder of his probation time had been terminated. *Id.* at 3. He also asserts that, two months after he filed his original complaint, he was served with another consent order regarding the probation he argues was terminated or suspended. *Id.* Plaintiff argues Defendants should be held liable for Plaintiff's Fourth Amendment malicious prosecution claim in the amount of at least $15,400.00 dollars; Plaintiff seeks no injunctive relief. *Id.* at 3-4.

On February 27, 2026, Defendants timely filed an MSJ, arguing that (1) Plaintiff's Fourth Amendment malicious prosecution claim is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), (2) Plaintiff cannot show a violation of his Fourth Amendment rights occurred, and (3) Defendants are protected by qualified immunity (ECF Nos. 42, 42-1, 42-2). The Court received Plaintiff's response on July 20, 2026, which did not include a separate document of disputed facts (ECF No. 56). On July

21, 2026, Defendants replied by reiterating their original arguments and noting that Plaintiff did not properly provide his disputed facts such that Defendants' set of undisputed facts should be deemed admitted (ECF No. 57).

On March 5, 2026, Plaintiff timely filed his MSJ, arguing his Fourth Amendment malicious prosecution claim should succeed on summary judgment (ECF Nos. 44, 44-1). Defendants responded on April 7, 2026, reiterating arguments they made in their MSJ and noting that Plaintiff failed to file the evidence cited in his motion (ECF No. 48). On May 22, 2026, the Court received Plaintiff's reply, which reiterated his prior arguments and noted that his indigent status prevented him from submitting exhibits in support of his MSJ (ECF No. 51). On September 27, 2026, the Court ordered Plaintiff to file any documents referenced in his MSJ that are not already in the record. Order, ECF No. 58. The Court informed Plaintiff that "[f]ailure to comply and rebut Defendants' material facts with supporting evidence may result in the Court accepting Defendants' uncontested facts as true." *Id.* Plaintiff failed to supplement the record.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a genuine dispute of material fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all

justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is material if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is genuine if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

The party seeking summary judgment:

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (quotations and citation omitted). "The evidence presented cannot consist of conclusory allegations or legal conclusions." *Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991). If the movant meets this burden, "[t]he burden then shifts to the nonmoving party, who is required to 'go beyond the pleadings' to establish that there is a 'genuine issue for trial.'" *Whitehead v. BBVA Compass Bank*, 979 F.3d 1327, 1328 (11th Cir. 2020) (citation omitted). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

"The standard of review for cross-motions for summary judgment does not differ from the standard applied when only one party files a motion, but simply requires a determination of whether either of the parties deserves judgment as a matter of law on the facts that are not disputed." *GEBAM, Inc. v. Inv. Realty Series I, LLC*, 15 F. Supp. 3d 1311, 1315-16 (N.D. Ga. 2013) (citation omitted). "The Court

must consider each motion on its own merits, resolving all reasonable inferences against the [movant; c]ross-motions may, however, be probative of the absence of a factual dispute[.]" *Loiseau v. Thompson, O'Brien, Kemp & Nasuti, P.C.*, 499 F. Supp. 3d 1212, 1219 (N.D. Ga. 2020) (citation omitted).

## II. Undisputed Material Facts

### A. Plaintiff's failure to comply with the local rules

The Local Rules of the Middle District of Georgia provide:

> The movant for summary judgment under Rule 56 of the Federal Rules of Civil Procedure shall attach to the motion a separate and concise statement of the material facts to which the movant contends there is no genuine dispute to be tried. Each material fact shall be numbered separately and shall be supported by specific citation to particular parts of materials in the record. Material facts not supported by specific citation to particular parts of materials in the record and statements in the form of issues or legal conclusions (rather than material facts) will not be considered by the court. Affidavits and the introductory portions of briefs do not constitute a statement of material facts.

M.D. Ga. L. R. 56. A respondent to an MSJ must also attach to their response an accompanying separate document containing a short and concise statement of material facts. *Id.* If it does not, then "all material facts contained in the movant's statement which are not specifically controverted by specific citation to particular parts of materials in the record shall be deemed to have been admitted, unless otherwise inappropriate." *Id.*

The Court sent Plaintiff notice of his right to respond to Defendants' MSJ and referred him to Local Rule 56's requirements. Notice, March 2, 2026, ECF No. 43. But Plaintiff failed to include a separate statement of material facts with his MSJ (ECF No. 44) or in his response to Defendants' MSJ (ECF No. 56). Instead, in his

own MSJ, Plaintiff combined argument and facts, organized by the elements of his claim. Pl.'s Br. in Supp. of MSJ ("Pl.'s MSJ Br.") 1-21, ECF No. 44-1. In his response to Defendants' MSJ, Plaintiff cited Defendants' facts and then argued why they are incorrect or irrelevant. Pl.'s Resp. to Def.'s MSJ ("Pl.'s Resp.") 1-20, ECF No. 56. This is insufficient to satisfy Local Rule 56.

Nevertheless, the Court "has broad discretion to overlook a nonmoving party's noncompliance with Local Rule 56[] and to look beyond the confines of a statement of undisputed facts on summary judgment." *Hampton v. Atzert*, 590 F. App'x 942, 944 (11th Cir. 2014) (quotations and citation omitted) (cleaned up); s*ee Light for Life, Inc. v. Our Firm Found. for Koreans, Inc.*, No. 3:12-cv-38 (CAR), 2015 WL 631138, at *2 (M.D. Ga. Feb. 12, 2015) (noting the plaintiffs' non-compliance with the local rules but exercising its discretion to determine if their conclusory denials of the defendants' statement of facts without citation to the record were supported by the evidence). Moreover, the Court must consider the entire record when ruling on a MSJ. Fed. R. Civ. P. 56(c)(3); *see Baker v. Sears, Roebuck & Co.*, 903 F.2d 1515, 1519 (11th Cir. 1990) ("[T]he court must consider the entire record in the case, not just those pieces of evidence which have been singled out for attention by the parties.").

Here, Plaintiff failed to file a separate document of material facts and failed to provide all of his cited evidence. Plaintiff did cite many documents provided by Defendants, and he listed his undisputed and disputed facts in his briefing. Pl.'s MSJ Br. 1-21; Pl.'s Resp. 1-20. The Court finds it appropriate to consider Plaintiff's improperly asserted facts in addition to Plaintiff's citations to evidence already in the

record, both of which are reviewed based upon the standards below.

B. Determining what facts are undisputed for summary judgment

In determining what facts are undisputed, the Court only considers "evidence" submitted into the record. *See Bueno v. USCIS Kendall Field Off.*, 809 F. App'x 651, 654 (11th Cir. 2020) ("In evaluating a motion for summary judgment, a court considers all record evidence, 'including depositions, documents, electronically stored information, affidavits or declarations, . . . or other materials.'") (ellipses in original) (quoting Fed. R. Civ. P. 56(c)(1)(A)). While Plaintiff made numerous factual assertions in his filings, none of them are admissible evidence. For a statement to be considered on summary judgment, it must be admissible in evidence or capable of being reduced to an admissible form at trial. *See McMillian v. Johnson*, 88 F.3d 1573, 1584-85 (11th Cir. 1996). "Unsworn statements, even from *pro se* parties, should not be considered in determining the propriety of summary judgment." *McCaskill v. Ray*, 279 F. App'x 913, 915 (11th Cir. 2008) (quotations and citation omitted) (cleaned up). Here, Plaintiff submitted neither an affidavit nor an unsworn declaration under penalty of perjury that could be substituted as an affidavit. *See* 28 U.S.C. § 1746 (allowing unsworn written statement to substitute for a sworn declaration or affidavit where it is signed and dated by the declarant as true under penalty of perjury).

While the Court considers Plaintiff's statements made in response to the Defendants' MSJ to the extent they comment on the record, they do not constitute evidence themselves. Further, they do not create a dispute of fact for purposes of summary judgment. *See United States v. Martin*, No. 1:17-cv-02166-ACA, 2019 WL

1167793, at *4 (N.D. Ala. Mar. 13, 2019) (stating that unsworn statements "cannot create a genuine dispute of fact"). Hence, where Defendants have presented sworn affidavits containing factual allegations that are not contradicted by other record evidence, they will be deemed undisputed.

C. Undisputed facts in this case

Defendant Shank has been employed by the Georgia Department of Community Supervision (GDCS) since 2015 as a Community Supervision Officer (CSO). Defs.' Facts ¶ 3, ECF No. 42-1; Shank Decl. ¶ 2, ECF No. 42-15. He monitors probationers for compliance with sentence conditions. Defs.' Facts ¶ 4; Shank Decl. ¶ 3. If they do not comply, he decides whether they need to return to the sentencing court. *Id.* If they do, then a CSO will issue a warrant for their arrest, securing their appearance at a revocation hearing. *Id.* From 2020 to 2024, Defendant Unwin was employed by GDCS as an assistant chief. Defs.' Facts ¶ 2; Unwin Decl. ¶ 2, ECF No. 42-14. She supervised CSOs so that when a CSO found a probationer violated his or her sentence conditions, she would review and approve or disapprove of the CSO's proposed actions. Defs.' Facts ¶ 5; Unwin Decl. ¶ 3. This included issuing a probation warrant or submitting a petition for revocation or a consent order. *Id.*

On February 12, 2021, Plaintiff was convicted of two counts of burglary in the second degree in Case No. SU-2020-CR-2038, and he was sentenced to eight years with the first 24 months to be served in confinement and the rest to be served on probation. Defs.' Facts ¶ 9; Pl.'s Dep. 55, ECF No. 42-3; Dep. Ex. 4 at 1, ECF No. 42-7; Pl.'s Resp. 2. On July 6, 2021, a CSO issued a probation warrant for Plaintiff's

arrest in Case No. SU-2020-CR-2038. Defs.' Facts ¶ 15; Dep. Ex. 3, at 15-16, ECF No. 42-6; Pl.'s Resp. 6. On August 25, 2021, Defendant Shank submitted a petition to revoke Plaintiff's probation in the same case. Defs.' Facts ¶ 16; Dep. Ex. 3, at 5; Pl.'s Resp. 6. On September 9, 2021, a superior court judge signed an order for Plaintiff to show cause why probation should not be revoked. *Id.* On December 17, 2021, a superior court judge revoked Plaintiff's probation. Defs.' Facts ¶ 16; Dep Ex. 3, at 6; Pl.'s Resp. 6-7. The Revocation Order stated that Plaintiff's probation was revoked for a prison time of four years "suspended on RSAT [with] the [Plaintiff to] serve the remainder of his/her sentence under probation supervision upon his/her release from confinement, subject to the same rules and special conditions as originally ordered[, e]nter and complete [an RSAT] and all [a]ftercare requirements[, and t]hereafter [r]eturn[] to [p]robation." Dep. Ex. 3 at 6.

Also on December 17, 2021, Plaintiff was convicted of burglary in the first degree in Case No. SU-2021-CR-1312 and was sentenced to ten years with the first four years to be served in confinement and the remainder to be served on probation. Defs.' Facts ¶¶ 10-12; Pl.'s Dep. 56-58; Dep. Ex. 5, at 1-8, ECF No. 42-8; Pl.'s Resp. 2-4. The final disposition noted specific conditions: (1) "Defendant shall enter and complete a Regional Substance Abuse Treatment Program[;]" (2) "Defendant is sentenced to 4 years in confinement, with that time suspended upon acceptance into the [RSAT] facility[;]" (3) "Defendant shall . . . have no contact" with the victim in the case; and (4) "Sentence is suspended upon entering and completing RSAT[.]" Dep. Ex. 5, at 4-5, 8. The word "Suspended" appears on the first page next to Plaintiff's

sentence. *Id.* at 1. Based on the sentencing transcript, the parties believed that Plaintiff must return to probation for Case No. SU-2020-CR-2038 once he finished his confinement for Case No. SU-2021-CR-1312. Defs.'s Facts ¶ 12; Tr. 11-13, ECF No. 42-16;[2] Pl.'s Resp. 3-4. Defendants did not review this transcript before revoking Plaintiff's probation. Defs.' MSJ Br. 17; Pl.'s Resp. 3.

Plaintiff participated in the RSAT program from February 8, 2022, to November 10, 2022; afterwards, Plaintiff resided at a sober living facility from November 10, 2022, to December 23, 2022. Defs.' Facts ¶ 13; Pl.'s Dep. 41-42; Pl.'s Resp. 4-5. During that time, he did not report to probation for Case No. SU-2021-CR-1312 or Case No. SU-2020-CR-2038. *Id.* The RSAT program normally has an aftercare requirement of six months that would have required Plaintiff to report to probation after completion. Unwin Decl. ¶ 8; Shank Decl. ¶ 9; Pl.'s Resp. 4-5. To Defendants Shank and Unwin's knowledge, Plaintiff did not complete his aftercare. Unwin Decl. ¶ 8; Shank Decl. ¶ 9.

On January 9, 2023, Taniyah Tarver signed and issued two probation warrants for Plaintiff's arrest in Case Nos. SU-2020-CR-2038 and SU-2021-CR-1312. Defs.'

---

[2] The transcript at pages 11-13 states:

> [Plaintiff's Attorney]: . . . Mr. Morris is entitled to credit for the time he's been in jail. He's been in jail since June 16th of this year. Also put on the record that to his probation sentences are set to end in April 2022, so those should terminate while doing this sentence. His other one[ in Case No. SU-2020-CR-2038] is not set to end until 2027, so my understanding is that after he completes his confinement on this sentence, he would return to probation on that other sentence. . . . .
>
> [Judge]: I will accept your plea, Mr. Morris. I find that you have done this willingly, knowingly, intelligently, and voluntarily. I will follow this recommendation. On the new charge, [ten] years probation, four years confinement suspended upon the completion of the RSAT program, stay away from [the victim]. And revoking four years on the underlying VOP matters, some of which will expire I believe – I believe one [in Case No. SU-2020-CR-2038] to still be in effect once you finish RSAT. . . .

Facts ¶¶ 21-22; Pl.'s Dep. 59-62; Dep. Ex. 6, ECF No. 42-9; Pl.'s Resp. 8. Defendants Unwin and Shank did not seek the January 9, 2023 arrest warrants, and Defendant Unwin did not supervise Taniyah Tarver at that time, nor did she review the warrants before they were issued. Defs.' Facts ¶ 23; Unwin Decl. ¶ 5; Shank Decl. ¶ 6; Pl.'s Resp. 7-12.[3] Plaintiff was arrested on March 15, 2023 and taken to Muscogee County Jail on March 22, 2023. Defs.' Facts ¶ 24; Pl.'s Dep. 28; Unwin Decl. ¶ 5; Shank Decl. ¶ 6; Pl.'s Resp. 12-13.

While Plaintiff was detained at Muscogee County Jail, Plaintiff, Defendants, and an assistant district attorney signed a consent order in Case No. SU-2021-CR-1312, which a superior court judge later signed.[4] Defs. Facts ¶¶ 25-26; Dep. Ex. 7, ECF No. 10; Pl.'s Resp. 12-13. The consent order required Plaintiff to serve 60 days

[3] Plaintiff argues this cannot be true but provides only conjecture in support of his argument. First, Plaintiff notes Defendant Shank has been his probation officer since 2020, citing to many probation warrants for Plaintiff's arrest signed by Defendant Shank. Dep. Ex. 3, ECF No. 42-6; Pl.'s Resp. 9. Second, Plaintiff points to Defendant Unwin's declaration which states that, as an assistant chief, when a CSO finds a probationer violated a sentence condition, she approves or disproves of their proposed actions. Unwin Decl. ¶ 3; Pl.'s Resp. 9. Third, Plaintiff asserts that "Document Def000194" shows that a CSO submitted the relevant warrants for approval, and they were approved and forwarded to Taniyah Tarver for further processing. Pl.'s Dep. 60-61; Pl.'s Resp. 9. Yet, that document is not in the record other than by reference in Plaintiff's deposition. *Id.* Fourth, Plaintiff notes that Case No. SU-2021-CR-1312's sentencing transcript notes Taniyah Tarver said, "I just assumed this case last month, although I do have the recommendation from the previous officer." Pl.'s Resp. 10; Tr. 5. Plaintiff concludes from these facts that Defendant Shank was the CSO that began the warrant process, but he even admits he is "just assuming that[.]" Pl.'s Dep. 61. None of these facts or arguments create a *genuine* dispute as to whether Defendant Shank was the CSO who recommended a warrant be issued nor do they show that Defendant Unwin reviewed any such warrant.

[4] A consent order, which outlines the terms of the sentence, the violations of the sentence conditions, and a recommended disposition, is drafted by a CSO, approved by that CSO's supervisor, provided to the DA's office, and served on the probationer. Defs. Facts ¶ 6; Unwin Decl. ¶ 4; Shank Decl. ¶ 5. Probationers are not required to sign consent orders, but, if a probationer chooses to sign the consent order, the probationer acknowledges that he or she violated the sentence conditions as written in the consent order, waives his or her right to a revocation hearing, and agrees to the recommended disposition. *Id.* If all other parties sign the consent order, including the CSO, the CSO's supervisor, and the DA's office, the judge reviews the consent order and, once he or she signs it, the order is entered and the disposition as outlined in the consent order becomes official. *Id.*

in the Muscogee County Jail with credit from time served since March 22, 2023. Dep. Ex. 7. Plaintiff also waived his right to a revocation hearing and legal counsel, admitting to violating the following condition of his probation:

> Do not change your place of abode, move outside the jurisdiction of the Court, or leave Georgia without permission of the [CSO]. On 12/29/2022, the supervision officer was notified by the head of household that the defendant did not live at the residence.

*Id.* Upon release, Plaintiff was to "return to supervised probation with all rules and conditions of the original court order." *Id.* On May 4, 2023, Plaintiff signed another consent order, along with Defendant Shank, Leah Unwin, the assistant district attorney (signing April 28, 2023), and the superior court judge, for the same exact agreements, but this time in Case No. SU-2020-CR-2038. Defs.' Facts ¶ 27; Dep. Ex. 8, ECF No. 42-11; Pl.'s Resp. 12-13. Plaintiff was also released from Muscogee County Jail on May 4, 2023. Defs.' Facts ¶ 28; Pl.'s Dep. 81; Pl.'s Resp. 13.

Before Plaintiff's probation was revoked in these cases, Defendant Shank reviewed a copy of the final disposition, reviewed the DCS case notes, and discussed the sentences with the DA's office and the Clerk's office to ensure the sentences were correct and that the probation should be revoked. Shank Decl. ¶ 7. Defendant Unwin reviewed a copy of the final disposition and discussed her review with Defendant Shank. Unwin Decl. ¶ 6. Based on their reviews, Defendants believed that Plaintiff was on probation for both cases and had violated the terms of those probations. Unwin Decl. ¶ 6; Shank Decl. ¶ 7. Plaintiff argues that, if Defendants had properly reviewed Plaintiff's records, Defendants should have noticed the suspension language in his sentences. Pl.'s Resp. at 7-8.

Plaintiff was incarcerated on September 13, 2023, for unrelated charges, and, on September 19, 2023, probation warrants were again issued in Case Nos. SU-2021-CR-2038 and SU-2021-CR-1312. Defs.' Facts ¶¶ 28-30; Pl.'s Dep. 66-67, 81; Dep. Ex. 9, ECF No. 42-12; Pl.'s Resp. 13-15. Defendant Shank sought dismissal of the warrants on November 7, 2023 because the sentences were "properly calculated and [Plaintiff wa]s out of custody and not under probation supervision until 06/15/2025 due to sentence suspension." Dep. Ex. 9. In February 2024, a GDCS program manager, who is in a higher position than Defendants and has authority to review sentences, found the entire sentence in Case No. SU-2021-CR-1312 should have been suspended. Defs.' Facts ¶ 31; Unwin Decl. ¶ 9; Shank Decl. ¶ 10; Pl.'s Resp. 13-15.

## III. The Fourth Amendment Malicious Prosecution Claim Fails

As explained below, Plaintiff's MSJ should be denied for the same reason Defendants' MSJ should be granted. The Court finds that Plaintiff cannot succeed on his Fourth Amendment malicious prosecution claim. Since the case may be decided based on this one issue, the Court finds it unnecessary to assess Defendants' *Heck*[5] or qualified immunity arguments.

---

[5] While Plaintiff is in custody now, he has not been in custody for the probation convictions at issue here since his May 4, 2023 release. Defs.' Facts ¶ 28; Pl.'s Dep. 81; Pl.'s Resp. 13. "A circuit split has developed regarding the application of *Heck* to situations [such as here] where a claimant, who may no longer bring a habeas action, asserts a § 1983 complaint attacking a sentence or conviction." *Domotor v. Wennet*, 630 F.Supp.2d 1368, 1376-77 (S.D. Fla. 2009) (collecting cases). "There are cases from th[e Eleventh C]ircuit that have suggested that *Heck* never applies to such a suit, while others suggest *Heck* would almost always apply[; s]till other cases have suggested a middle ground—that application of *Heck* turns on whether the plaintiff had a meaningful opportunity to file for habeas relief while incarcerated." *Topa v. Melendez*, 739 F. App'x 516, 519 (11th Cir. 2018) (citations omitted). As the Eleventh Circuit still has not resolved this debate, the Court refrains from assessing whether it applies here as Plaintiff's claim fails on other grounds. *See Bradley v. Bradley*, No. 3:23-cv-199-TCB, 2024 WL 6981173, at *4 (N.D. Ga. Jan. 11, 2024) (citations omitted) ("Because the circumstances fall into the 'open question' of whether a § 1983 plaintiff can seek habeas relief while not in custody and the claims fail on other grounds, the Court will not conclude whether the *Heck* doctrine applies."); *see*

"The constituent elements of the common law tort of malicious prosecution include: (1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff['s] . . . favor; and (4) caused damage to the plaintiff[.]" *Paez v. Mulvey*, 915 F.3d 1276, 1285 (11th Cir. 2019) (quotations and citation omitted) (cleaned up). But "to establish a federal malicious prosecution claim under § 1983, a plaintiff must [also] prove ([5]) the elements of the common law tort of malicious prosecution, and ([6]) a violation of her Fourth Amendment right to be free of unreasonable seizures." *Id.* The third prong, or the "favorable termination requirement," serves the following purposes:

> (i) it avoids parallel litigation in civil and criminal proceedings over the issues of probable cause and guilt; (ii) it precludes inconsistent civil and criminal judgments where a claimant could succeed in the tort action after having been convicted[]; and (iii) it prevents civil suits from being improperly used as collateral attacks on criminal proceedings.

*Thompson v. Clark*, 596 U.S. 36, 44 (2022) (citations omitted).

Plaintiff suffered damage from being incarcerated. As for the other elements, Defendants argue that, while they continued a criminal prosecution against Plaintiff through the consent orders, they did so without malice and with probable cause. Defs.' MSJ Br. 16-18; *see Gervin v. Florence*, 139 F.4th 1236, 1260 (11th Cir. 2025) (holding probation revocation proceeding can form be of malicious prosecution claim). Plaintiff reasonably argues Defendants should have noticed the suspension language

*also Ussery v. Houston Cnty., Georgia*, No. 5:24-cv-116 (MTT), 2024 WL 4424794, at *5 (M.D. Ga. Oct. 4, 2024), *reconsideration denied*, No. 5:24-cv-116 (MTT), 2025 WL 92929 (M.D. Ga. Jan. 14, 2025) (When considering *Heck* circuit split, court "decline[d] to address whether *Heck* applie[d]" since the plaintiff's malicious prosecution claim, among others, failed for other reasons); *see also Teichmann v. New York*, 769 F.3d 821, 828-29 (2d Cir. 2014) (concurrence) ("If an element of the underlying claim has not been met (as in a claim for malicious prosecution where there has been no favorable termination), again, there is no need to reach difficult *Heck* issues.").

in his sentence documents and determined at least one of his probations had been suspended. Pl.'s MSJ Br. 11-13; Pl.'s Resp. 18-19. From its review, the Court cannot definitively find whether probable cause supported Defendants' actions; this is a question for the fact finder. Thus, the Court does not find for Plaintiff or Defendants on this element with respect to their MSJs. But the Court can decide *both* MSJs based on the third requirement of a Fourth Amendment malicious prosecution claim.

In order to establish "favorable termination" under the Fourth Amendment, a plaintiff "need only show that the criminal prosecution ended without a conviction." *Thompson*, 596 U.S. at 49. Here, Plaintiff seeks damages for time incarcerated resulting from consent order convictions. Defs.' Facts ¶¶ 25-27; Dep. Ex. 7; Dep. Ex. 8; Pl.'s Resp. 12-13. But when Plaintiff signed the two consent orders, he admitted guilt and was convicted of violating his probation terms. *Id*; *see Johnson v. Cnty. of Paulding, Ga.*, No. 4:18-CV-0136-HLM, 2018 WL 10582211, at *2-4 (N.D. Ga. Oct. 31, 2018), *aff'd*, 780 F. App'x 796 (11th Cir. 2019) (noting that where a plaintiff entered into a consent order revoking his probation, he "was *convicted* for a probation violation[.]") (emphasis added); *see also Laskar*, 972 F.3d at 1295 (finding favorable-termination element requirement met when criminal proceedings "end in a manner not inconsistent with [a plaintiff's] innocence" and not met when it "ends in the plaintiff's *conviction on or admission of guilt to each charge that justified his seizure*." (emphasis added)); *see also Haywood v. Green*, 695 F. Supp. 3d 1315, 1325-26 (N.D. Ala. 2023) ("Haywood pleaded guilty to the charges brought against him . . . and the Circuit Court imposed a seven-year concurrent prison sentence as a result of

Haywood's guilty-plea conviction, [so] Haywood cannot establish the state criminal action terminated in his favor."). Because Plaintiff was convicted, termination of his proceedings was unfavorable. Thus, Plaintiff cannot succeed on his malicious prosecution claim at either the summary judgment or trial phase.

Contrary to Plaintiff's arguments,[6] the fact that Defendant Shank sought dismissal of subsequent warrants regarding Case Nos. SU-2021-CR-2038 and SU-2021-CR-1312 is irrelevant. Defs.' Facts ¶¶ 28-30; Pl.'s Dep. 66-67, 81; Dep. Ex. 9; Pl.'s Resp. 13-15. The fact that, in February 2024, a GDCS program manager found the entire sentence for Case No. SU-2021-CR-1312 should have been suspended is similarly irrelevant to this analysis. Defs.' Facts ¶ 31; Unwin Decl. ¶ 9; Shank Decl. ¶ 10; Pl.'s Resp. 13-15. Plaintiff was convicted based on consent orders, and these convictions defeat his malicious prosecution claim. Dep. Ex. 7; Dep. Ex. 8; *see Gervin*, 139 F.4th at 1253 (citing *Whiting v. Traylor*, 85 F.3d 581, 584 (11th Cir. 1996)) ("favorable-termination requirement functions as a rule of accrual"); *see also Whiting*, 85 F.3d at 585 ("At common law, a plaintiff had no malicious prosecution claim until the underlying proceeding was terminated in his favor."). Consequently, Defendants' MSJ should be granted and Plaintiff's should be denied.

[6] Plaintiff argues: "Defendants obtained and approved warrants twice in 2023, and the second time obtained and approved warrant dismissals [since] Plaintiff was 'not under probation supervision until 6/15/2025.' So anything obtained after 12/17/21 but before 6/15/25 is invalid. . . . The dismissal of the second warrants invalidated the first ones." Pl.'s Resp. 17. Plaintiff cites no legal support for this reasoning. As for Plaintiff's citation to *Gervin v. Florence*, the Court finds it is inapplicable to the circumstances in this case because, in *Gervin*, a plaintiff "established that the state court released him without revoking his probation[, s]o the court dismissed the probation-revocation proceedings against Gervin 'in a manner not inconsistent with his innocence.'" *Gervin*, 139 F.4th at 1249-50 (citing *Laskar*, 972 F.3d at 1295). Here, Plaintiff's probations *were* revoked through his consent.

## CONCLUSION

For the reasons explained above, it is recommended that Plaintiff's motion for extension of time to file surreply (ECF No. 60) be **DENIED**, and that Defendants' MSJ (ECF No. 42) be **GRANTED** and Plaintiff's MSJ (ECF No. 44) be **DENIED**. Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, within FOURTEEN (14) DAYS after being served with a copy hereof. Any objection should be no longer than TWENTY (20) PAGES in length. The district judge shall make a *de novo* determination of those portions of the Recommendation to which objection is made. All other portions of the Recommendation may be reviewed for clear error.

"A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." Eleventh Circuit Rule 3-1.

**SO RECOMMENDED**, this 25th day of August, 2026.

s/ *Amelia G. Helmick*
UNITED STATES MAGISTRATE JUDGE